UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

RAMONIA KIDD,                )
                             )
    Plaintiff,                ) Civil Action No. 10-cv-28-JMH
                             )
v.                           )
                             )
MICHAEL J. ASTRUE,            )
Commissioner of Social        ) **MEMORANDUM OPINION AND ORDER**
Security,                    )
                             )
    Defendant.                )

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record No. 10 and 11].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   OVERVIEW OF THE PROCESS**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1.  An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2.  An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.
>
> 3.  If an individual is not working and has a severe

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). The claimant bears the burden of proof to show that he is disabled through the first four steps. *Id.* If the claimant has not been found disabled through the first four steps, however, the burden of proof shifts to the Secretary of Health and Human Services. *Id.*

## II. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the

2

proper legal standards in reaching his conclusion, see *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**III. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Ramonia Kidd has "not engaged in substantial gainful activity since December 1, 2005, the alleged onset date." [Tr. 13]. She was diagnosed with depression, and the ALJ has found her impairments severe. [Tr. 13-14]. The ALJ concluded, however, and Plaintiff does not dispute that her impairments do not "meet[] or medically equal[] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 14-16]. She previously worked as a fast food worker, grocery store cashier, and a bar tender,and the ALJ has found, based on testimony by a vocational expert, Donald J. Goodwine, and a review of her residual functional capacity, that she is unable to perform past relevant work. [Tr. 16-18]. The ALJ next considered Plaintiff's residual functional capacity, age, education and past work experience to determine if the Plaintiff could do other work as required in step five of the analysis used to determine disability. [Tr. 19]. Based on the above-listed factors, the vocational expert testified that Plaintiff could perform 70%-75% of the jobs in the national and regional economy

3

and the ALJ held Plaintiff was not disabled. [Tr. 19-20], [Tr. 31-32].

Throughout his analysis of Plaintiff's residual functional capacity and the Plaintiff's potential to do other work the ALJ gave "very little weight" to the report of Dr. Timothy Carbary. [Tr. 18]. In doing so, the ALJ stated:

> The undersigned gives Dr. Carbary's report and opinion very little weight for several reasons. To begin with, Dr. Carbary's findings and limitations are not supported by other evidence and appear to be based mainly upon the claimant's subjective complaints, which I do not find to be persuasive. The limitations in Dr. Carbary's opinion are inconsistent with the findings of the consultative examining psychologist and the State agency psychological consultant (Exhibits 11F and 14F). In addition, the claimant's treating physician did not mention any mental impairments as severe as those in Dr. Carbary's report. Finally, there is no reason to believe these impairments and associated limitations will last more than 12 months.

[Tr. 18]. Dr. Carbary's report diagnosed Plaintiff with major depressive disorder, impulse control disorder, dysthymic disorder, and dependent personality characteristics. [Tr. 18](citing Exhibit 24F). Dr. Carbary's report further stated that Plaintiff would have difficulty paying attention to tasks, relating to others, adapting to the usual work related stresses and pressures, and that the Plaintiff has a tendency toward self-harming behaviors. [Tr. 461]. When asked about the jobs Plaintiff could perform with these limitations, Goodwine stated that Plaintiff would not be able to maintain any job. [Tr. 34].

## IV. DISCUSSION

### A. The ALJ acted properly in giving "very little weight" to Dr. Carbary's report.

Plaintiff's lone argument in her motion for summary judgment is that the ALJ erred when he gave "very little weight" to the report and opinion of licensed psychologist Dr. Timothy Carbary who examined Plaintiff at the law offices of her attorney, Eric C. Conn. [Tr. 455-464]. Plaintiff has argued the ALJ improperly "played doctor" by making his determination on the fact that Dr. Carbary based his report on Plaintiff's subjective complaints and reached conclusions that were inconsistent with the findings of the other doctor's reports in the record. [Record No. 10]; [Tr. 18]. Defendant has argued, however, that "the ALJ did not diagnose any condition, provide treatment, or do anything ordinarily done by a doctor." [Record No. 11, p. 5]. Rather, Defendant believes the ALJ based his decision to give "very little weight" to Dr. Carbary's findings on substantial evidence. [Record No. 11, p. 5]; [Tr. 18].

To begin, the Sixth Circuit has held that "[i]t is well within the province of the ALJ to credit one medical opinion over another." *Acquaviva v. Sec'y of Health & Human Servs.*, 725 F.2d 682, 682 (6th Cir. 1983)(unpublished opinion). While regulations require the ALJ to "give good reasons" for his decisions regarding the weight assigned to a treating physician's opinion, the regulations impose no such requirement on the opinions of other doctors. 20 C.F.R. 404.1527(d)(2). The Sixth Circuit requires a

5

claimant see the doctor "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition" before an ALJ must consider the doctor as the claimant's treating physician. *Smith v. Comm'r of Social Security*, 482 F.3d 873, 876 (6th cir. 2007)(citing 20 C.F.R. § 404.1502). The assessment from the record, however, notes the observations made by Dr. Carbary came from an hour and fifteen minutes with the Plaintiff and approximately two hours of tests performed by Helen Morgan, M.S., on the Plaintiff. [Tr. 455]. Therefore, as a nontreating source, Dr. Carbary's opinions will carry less weight than a treating source, and the ALJ need not give the same sort of detailed reasons for his assignment of weight to Dr. Carbary's opinion as the ALJ would have to provide for a treating physician. *Smith*, 482 F.3d at 875-77 (citing 20 C.F.R. § 404.1502(d)(1)(2)).

Regulations require the ALJ, however, to evaluate and give proper weight to every medical opinion received based on the following factors: 1) examining relationship between the claimant and the doctor, 2) treatment relationship between the claimant and the doctor, 3) relevant evidence that supports the opinion, 4) consistency with the record as a whole, 5) specialization, and 6) other factors brought to the ALJ's attention. 20 C.F.R. 404.1527(d)(1)-(6). Using these factors, the ALJ must "explain his credibility determinations in his decision such that it 'must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)(citation omitted). Thus, the ALJ must make clear, using the factors outlined above, his reason for giving "very little weight" to Dr. Carbary's report. Provided the ALJ has based this decision on substantial evidence, this Court must affirm the ALJ's treatment of Dr. Carbary's report and opinion.

        **1. The ALJ did not weigh the evidence improperly as Dr. Carbary based his opinion on subjective complaints.**

Plaintiff argues that the ALJ needed a medical opinion to make the finding that "Dr. Carbary's findings and limitations are not supported by other evidence and appear to be based mainly upon the claimant's subjective complaints, which I do not find to be persuasive." [Record No. 10-1, p.3](citing Tr. 18). Plaintiff argues because the ALJ reached a decision without seeking another medical opinion with which to compare Dr. Carbary's opinion, the ALJ instead "played doctor" in determining the reliability of medical testimony. [Record No. 10-1, pp. 3-4]. This Court, however, rejects Plaintiff's argument requiring the ALJ to seek another medical opinion before discounting Dr. Carbary's opinion and finds the record contains substantial evidence to warrant the ALJ's conclusion.

Defendant argues, and this Court agrees, that "the ALJ did not

diagnose any condition, provide treatment, or do anything ordinarily done by a doctor." [Record No. 11, p. 5]. Plaintiff relies heavily on the Seventh Circuit's ruling in *Green v. Apfel* which required an ALJ to "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." 204 F.3d 780, 781 (7th Cir. 2000). As noted by the Defendant, however, the ALJ in this matter had evidence to consider and thoroughly explained his findings as to why he questioned Dr. Carbary's testimony. [Record No. 11, pp. 9-10](citing *Apfel*, 204 F.3d 780); [Tr. 18]. Furthermore, the ALJ did not attempt to make findings based on raw data in a medical record, as argued by the Plaintiff, but rather made credibility determinations necessary to "make a decision based on the evidence that is in the file and any new evidence that may have been submitted for consideration." 20 C.F.R. § 404.929; *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)(citation omitted)("The determination of liability is [ultimately] the prerogative of the [Commissioner] . . . ."). Thus, the ALJ used the opinions of other doctors that had diagnosed Plaintiff as a basis for his observations made during Plaintiff's testimony that the testimony "was vague and somewhat elusive" as well as "exaggerated, especially in light of the objective medical evidence." [Tr. 17]. None of these statements attempt to diagnose the severity of Plaintiff's condition but rather explain

the ALJ's credibility determination as to Plaintiff's testimony. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007)(citation omitted). As a result, this Court finds the ALJ did not "play doctor" but rather acted properly in weighing the evidence submitted into the record.

Furthermore, this Court finds substantial evidence to support the ALJ's finding that Plaintiff's subjective claims, which Dr. Carbary used to form his opinion, were not credible. [Tr. 18]. The ALJ may discount a party's credibility when the ALJ, relying on substantial evidence, "finds contradictions among medical reports, claimant's testimony and other evidence [and] may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997). Thus, the ALJ stated that, while Plaintiff has testified to "numerous physical impairments . . . [,] she has received little or no treatment for these problems." [Tr. 17]. The ALJ also found Plaintiff's testimony concerning constant pain to be vague and evasive, concluding that her claims of severe back and knee pain were exaggerated, especially in light of Plaintiff's ability to drive. *Id*. Furthermore, the ALJ observed that while Plaintiff's biggest problem was depression, "she [] never sought or received treatment from a mental health professional." *Id*. The Sixth Circuit has found similar contradictions to be substantial evidence

9

allowing the ALJ to discount the credibility of the witness. *Blancha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)(noting that claimant's testimony that conflicted with medical reports, use of only mild medications, failure to seek treatment, and activities inconsistent with claims of disabling pain could provide the basis for questioning the credibility of claimant's testimony). This Court, therefore, concludes that substantial evidence exists in the record to support the ALJ's findings that Dr. Carbary's opinion was entitled to little weight.

> **2. The ALJ did not act as his own medical expert by finding inconsistencies in the medical opinions.**

This Court also finds the ALJ properly gave Dr. Carbary's opinion less weight after considering each of the factors required to weigh the evidence, including consistency with the record as a whole. In particular, the Court recognizes the ALJ acted appropriately in reaching this conclusion based, in part, on the fact that Dr. Carbary's report [Tr. 455-61] was inconsistent with those of state agency psychological consultant, Dr. Ed Ross [Tr. 270-73], consultative examining psychologist, Dr. Emily McGuire [Tr. 248-52], and Plaintiff's treating physician, Dr. Debra K. Hall [Tr. 461, 465-74]. Plaintiff argues that since Dr. Carbary's opinion did not come into the record until at least a year after the last reports by Dr. Ross and Dr. McGuire, no medical expert has weighed in on Dr. Carbary's opinion to contradict his findings. Furthermore, Plaintiff argues the ALJ could not hold "the

claimant's treating physician did not mention any mental impairments as severe as those in Dr. Carbary's report" as the ALJ did not rely on a medical opinion to make this determination. [Record No. 10-1](citing Tr. 18). Thus, Plaintiff states the ALJ had to act as "his own medical expert" to determine inconsistencies between Dr. Carbary's findings and the findings of the other doctors. [Record No. 10-1, p. 5].

Plaintiff relies on the decision by the Second Circuit in *Pratts v. Chater* that "a non-examining source's opinion that was based on incomplete medical records did not constitute substantial evidence to uphold the ALJ's decision." Record No. 10-1, p. 5](citing *Pratts v. Chatter*, 94 F.3d 34 (2d Cir. 1996)). Defendant argues, and this Court agrees, that the present matter is easily distinguishable from *Pratts.* In *Pratts*, the Second Circuit found the ALJ did not have substantial evidence to deny benefits as "[t]he sole evidence before the ALJ refuting [claimant's] claims of disabling pain and illness . . . was an incomplete medical history and an expert opinion rendered from it." *Pratts*, 94 F.3d at 38. Here, the ALJ relied upon other sources of evidence in reaching his conclusion. This included the Plaintiff's subjective claims, which he found not credible as discussed above, as well as the expert opinions contained in Dr. Ross, Dr. McGuire and Dr. Hall's reports based on the medical record provided by the plaintiff. *See* [Tr. 270-73], [Tr. 248-52], [Tr. 465-74]. As a result, this Court holds

11

the ALJ considered more evidence than medical findings based on an incomplete record and did not act improperly when he proceeded to weigh the evidence to make a determination as to Plaintiff's disability.

Furthermore, this Court holds the ALJ appropriately considered the factors required by regulation in making his determination to give Dr. Carbary's report "very little weight." *See supra* Part III.A.; [Tr. 18]. As previously discussed, the ALJ must consider the 1) the examining relationship between the doctor and Plaintiff, 2) any treating relationship, 3) the evidence used to support the doctor's opinion, 4) the opinion's consistency with the record as a whole, 5) the specialization of the doctor making the opinion, and 6) other factors brought to his attention in weighing medical opinions. 20 C.F.R. 404.1527(d)(1)-(6). In making his determination, the ALJ acknowledged Dr. Carbary performed a psychological evaluation on Plaintiff but never refers to Dr. Carbary as Plaintiff's treating physician. [Tr. 17-18]. Furthermore, the ALJ also recognized Dr. Carbary's diagnosis of "major depressive disorder, impulse control disorder, dysthymic disorder and dependent personality characteristics." [Tr. 17]. Thus, this Court finds the ALJ appropriately considered the examining relationship between the Plaintiff and the doctor, any treating relationship that may have existed, and the specialization of the doctor.

12

This Court also finds the ALJ considered the evidence used to support Dr. Carbary's opinion. The ALJ stated Dr. Carbary's findings and limitations were "based mainly upon the claimant's subjective complaints." [Tr. 18]. Plaintiff argues this incorrectly summarizes the support used for the report as Dr. Carbary relied on testing during his summary. [Tr. 460-61]. This Court agrees, however, with Defendant that the use of the word "mainly" recognizes "that some objective testing served as a basis for Dr. Carbary's opinion." [Record No. 11, p. 7]. Furthermore, a majority of Dr. Carbary's report does not contain any reference to the objective testing itself. As a result, this Court finds the ALJ appropriately considered the objective tests in conjunction with Plaintiff's subjective claims as support for Dr. Carbary's report and opinion.

Lastly, this Court finds the ALJ correctly considered the consistency of Dr. Carbary's report with the record as a whole. The report submitted by Dr. Carbary stated Plaintiff would have difficulty paying attention to tasks, relating to others, adapting to different work situations, and that Plaintiff has a tendency to self-harm. [Tr. 461]. Dr. McGuire stated, however, that Plaintiff had moderate limitations in her ability to stay on-task, tolerate stress and pressure associated with day-to-day employment, and work with others. [Tr. 252]. These moderate limitations, however, would not keep the Plaintiff from being "able to function

13

satisfactorily." *Id.* Dr. Ross also stated that Plaintiff had the basic mental skills to understand simple and detailed work instructions, complete routine tasks, tolerate and work with coworkers, and adapt to gradual changes in the workplace. [Tr. 272]. Furthermore, the ALJ also noted inconsistencies between Dr. Carbary's report and opinion and that of Plaintiff's own treating physician. [Tr. 18]. While Plaintiff argues that Dr. Hall mentions depression in her treatment notes on at least five different occasions, Dr. Hall does not detail the limitations caused by the impairment. [Record No. 10-1, p. 6], [Tr. 468, 470, 472, 473, 474]. As the Plaintiff bears the burden of proving the severity of her depression, a diagnosis that does not indicate a severe impairment will fall short of this burden. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)(citation omitted). Thus, the ALJ properly considered Dr. Carbary's report and opinion with those of Dr. McGuire, Dr. Ross, and Dr. Hall for purposes of looking for consistency of Dr. Carbary's report with the record as a whole.

Taking into account the factors used by the ALJ to properly weigh the report and opinion of Dr. Carbary, this Court finds the ALJ based his decision to give "very little weight" to Dr. Carbary's report and opinion on substantial evidence. The ALJ properly acknowledged that Dr. Carbary examined the Plaintiff but also properly noted that Dr. Carbary founded his report and opinion "mainly upon the claimant's subjective complaints." [Tr. 18].

Furthermore, the ALJ properly noted the inconsistency that existed between Dr. Carbary's report and the record as a whole, which included the opinions of Dr. McGuire, Dr. Ross and plaintiff's treating physician, Dr. Hall. [Tr. 18]. Thus, while Dr. Carbary's opinion deserves some weight due to his personal examination of the Plaintiff, this Court finds the ALJ, based on the inconsistencies in the record and the Plaintiff's incredible subjective complaints mainly used to support Dr. Carbary's opinion, had substantial evidence to warrant giving "Dr. Carbary's report and opinion very little weight." [Tr. 18].

### 3. The ALJ did not act as his own medical expert in determining the length and severity of the impairment.

Lastly, this Court finds the ALJ properly gave "very little weight" to Dr. Carbary's assessment of the length and severity of Plaintiff's impairments arising from the depression. [Tr. 18]. Plaintiff argues the ALJ's statement that "there is no reason to believe these impairments and associated limitations will last more than 12 months," which is at odds with Dr. Carbary's statement that Plaintiff's "prognosis for recovery from agitated depression is guarded," required the ALJ to "act as his own medical expert." [Record No. 10-1, p. 6](citing Tr. 18, 460). As previously stated, the ALJ must consider appropriate factors when weighing medical evidence, including the report's consistency with the record as a whole. 20 C.F.R. 404.1527(d)(1)-(6). This Court having already found the ALJ considered the other factors involved in weighing Dr.

15

Carbary's report and opinion will address only the factor of consistency with the record with regard to the ALJ's statement as to length and severity of the impairment. *See supra* III.A.2.

Defendant argues, and this Court agrees, Dr. Carbary's report and opinion regarding the length and severity of Plaintiff's impairment are inconsistent with the reports of both Dr. McGuire and Dr. Hall. To begin, Dr. McGuire assessed "the prognosis for [Plaintiff's] improvement [as] fair with mental health intervention." [Tr. 252]. Furthermore, the report submitted by Dr. Hall shows that medication administered between August 7, 2007 and November 13, 2007 helped Plaintiff's depression. [Tr. 470, 472]. This Court agrees with Defendant that Dr. Hall's records detailing how medication helped the Plaintiff further shows the veracity of Dr. McGuire's statement that Plaintiff's potential for improvement is fair with mental health intervention. Thus, Dr. Carbary's assessment of the length and severity of Plaintiff's impairment is inconsistent with the opinions in the record as a whole. While the ALJ acknowledged Dr. Carbary's dire opinion as to the Plaintiff's ability to work based on personal examination, the ALJ also properly recognized the opinion as inconsistent with the record as a whole using this as a factor to give Dr. Carbary's report and opinion very little weight. This Court, therefore, shall hold the ALJ based this decision on substantial evidence and acted appropriately in weighing Dr. Carbary's opinion.

**B. The ALJ properly denied Plaintiff's claim of disability based on substantial evidence**

Having found the ALJ acted properly in his treatment of Dr. Carbary's report, this Court finds that the ALJ had substantial evidence in the record that supports the ALJ's conclusion that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" and that the Plaintiff is not disabled. [Tr. 19](citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966)). A vocational expert's response to a hypothetical question may provide the ALJ substantial evidence with regard to Plaintiff's ability to perform other jobs "only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)(citation omitted); *accord Blancha v. Sec'y of Health & Human* Servs., 927 F.2d 228, 231 (6th Cir. 1990); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). In this case, the ALJ bases his finding on the testimony of vocational expert Donald J. Woolwine, who stated Plaintiff could perform 70%-75% of all jobs in the national and regional economy. [Tr. 19], [Tr. 33-34]. While Plaintiff argues that the ALJ should have relied on Woolwine's testimony that no jobs existed "when given the limitations opined by Dr. Carbary in his psychological assessment," this Court has already recognized the ALJ acted properly in giving "very little weight" to Dr. Carbary's report. [Record No. 10-1, p. 7], [Tr. 18]. Thus, the

vocational expert's testimony as to the number of jobs Plaintiff could perform with the limitations set forth in Dr. Carbary's report is irrelevant. Rather, the Court concludes the ALJ's conclusion that jobs exist in the national and regional economy that Plaintiff can perform was founded on substantial evidence and that Plaintiff is, therefore, not disabled. This Court, therefore, shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

**V. CONCLUSIONS**

As set forth above, this Court finds the ALJ acted properly in giving Dr. Carbary's report "very little weight" based on the factors, required by regulation, that the ALJ must consider when weighing medical opinions. Furthermore, this Court finds that the ALJ's conclusion that Plaintiff could perform 70%-75% of jobs in the national and regional economy is based on substantial evidence. It was not, therefore, error to conclude that Plaintiff is not disabled.

Accordingly, **IT IS ORDERED**:

(1) Plaintiff's Motion for Summary judgment is **DENIED**; and

(2) Defendant's Motion for Summary Judgment is **GRANTED**.

This the 2nd day of November, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge